[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action instituted by the plaintiffs under Section 8-8 of the Connecticut General Statutes appealing a decision of the Defendant, Planning and Zoning Commission of the Town of Greenwich. The Commission's decision approved a coastal site plan for the development of a single family residence on premises identified as 27 Cherry Tree Lane, Riverside, Connecticut. The Commission assumed jurisdiction over the site plan application because as initially proposed, the development was within 150 feet of tidal wetlands and the development's drainage exited into a salt water pond. See C.G.S. §§ 22a-90, et. seq; Section 6-111 CT Page 4069-K of the Building and Zone Regulations of the Town of Greenwich.
The premises are owned by the defendants, Peter and Charles Lewis. The application to develop the property was presented on their behalf by Clark Builders, Inc. The plaintiffs all own property within one hundred feet of the premises (Plaintiff's Exhibits 1-6), and therefore their standing to maintain the appeal is based on statutory aggrievement. C.G.S. § 8-8.
The Commission reviewed three applications to construct a single family residence on the premises. The first application was denied without prejudice in a decision dated January 22, 1993. See Return of Record dated January 23, 1995 ["ROR"], #49; Plaintiffs' Brief, Exhibit A. For this decision, the Commission considered whether the application complied with the criteria of the Connecticut Coastal Area Management Act ["CAM"] (See General Statutes § 22a-106), and denied the application for a variety of reasons. The Commission was concerned that the potential adverse impact to water quality and to coastal resources caused by the discharge of storm water from the site into a tidal pond had not been mitigated to the maximum extent possible. The Commission also noted that the plan proposed to bring 1,675 cubic feet of fill onto the site. The Commission was concerned that this amount of fill could violate the standards requiring preservation of features of the natural environment and natural attributes of the site because the addition of this fill would require clear-cutting which involved elimination of the existing typography; cause damage to the trees of abutting neighbors and create drainage problems on the property of abutting neighbors; and cause an adverse impact on coastal resources and on the value of adjoining properties because of possible erosion and sedimentation caused by flooding. Additionally, the Commission was not satisfied that other alternatives to accommodate storm water drainage had been fully explored and noted that nothing had been produced verifying that a state permit from the Department of Environmental Protection was not required for the revised drainage pipe. The Commission denied the application without prejudice and suggested that the applicant submit a revised plan addressing these and other issues listed by the Commission.
This revised application was filed by the applicant, and in a decision dated August 5, 1994, the Commission denied this revised application. ROR #20; Plaintiffs' Brief, Exhibit B. In its August 5, 1994 decision, the Commission concluded that the applicant had addressed and satisfied all the concerns and problems on which CT Page 4069-L the Commission relied to reject the first application, except for one — the proposal involved a storm water drainage system requiring a right of way over property owned by the Harbor Point Association, and the existence of this right of way had not been established to the Commission's satisfaction. Thus, the Commission again denied the application and recommended that the applicant proceed to secure a clear right of way for the drainage system or present other alternative development schemes.
The applicant filed another revised site plan application to address the Commission's final concern regarding the drainage system. At a hearing held on March 7, 1995, the Commission approved this site plan proposal to construct the single family residence with certain conditions and modifications, as specifically reflected in a decision letter dated March 13, 1995. ROR #44, #45. The most pertinent condition relevant to the instant appeal provides that a building permit shall not be issued until "[s]ubmission of the executed easement agreement from Harbor Point Association for the drainage site." ROR #45.
PROCEDURAL ARGUMENTS
The court will first address two procedural arguments raised by the plaintiffs. The plaintiffs argue that the Commission did not have jurisdiction over the application because the applicant lacked standing to present the plan to the Commission. Plaintiffs reason that since the proposed project "impacted" the properties of Harbor Point Association and the plaintiffs, Blaker and Reynolds, the applicant needed to acquire the consent of these adjacent property owners in order to present the application to the Commission. The court rejected this argument at the hearing held on plaintiffs' appeal. If the proposed construction "impacts" the adjacent property owners, than these owners may be "aggrieved", and in turn, they may have the right to contest the application before the Commission and through the judicial process. Plaintiffs' argument that a zoning applicant must acquire the consent of aggrieved neighbors in order to process the application is clearly without any legal basis.
Plaintiffs' next argument contests the adequacy of the Commission's notice of its decision granting the application. The notice states the following: "that Coastal Site Plan #1722-C, a plan for construction of a single family residence at 22 Cherry Tree Lane, in Riverside in the RA-1 acre zone, as shown on plans of Audrey Mead dated December 21, 1994, is hereby approved with CT Page 4069-M modifications." (ROR 44). Plaintiff claims that this notice does not sufficiently identify the property, since at the present time it is a lot of land, and fails to identify the owner or applicant. In making this argument plaintiffs rely on cases concerning the adequacy of publications giving notice of public hearings. Plaintiffs assume without discussion that the legal requirements for public notifications of a zoning hearing are the same as the requirements for public notification of a zoning decision. Compare Cocivi v. Planning and Zoning Commission,20 Conn. App. 705 (1990) (discussing prehearing notice), with R.B.Kent Sons, Inc. v. Planning Commission, 21 Conn. App. 370
(1990) (discussing post hearing notice). While notice of a zoning commission's decision is mandatory, it does not necessarily follow that notification of the decision must comply with the demanding requirements involved with a notification of the hearing itself. The court need not resolve this issue here because the court finds that the instant notice of the decision is adequate and is at least as specific as the post hearing notice upheld by the Appellate Court in R.B. Kent Sons, Inc. v.Planning Commission, supra.
SUBSTANTIVE ARGUMENTS
The primary substantive argument asserted by plaintiffs is that the Commission approved the application on the condition that the applicant submit an executed easement agreement from the Harbor Point Association allowing water to drain across Cherry Tree Lane, which is property owned by Harbor Point Association. Plaintiffs insist that Harbor Point Association had not granted the easement and the Commission had no control over whether it ever would be granted.
The record does not entirely support plaintiffs' characterization of the evidence before the Commission. The applicant offered evidence that by a majority vote, the Harbor Point Association had authorized the easement, but the exact terms had not been finalized (ROR, p. 8). There was also evidence that a single member of the Association expressed concerns about whether the Association's approval was based on all the correct information and opined that the approval might be "revisited" (ROR #29, p. 39). Under the circumstances, it was reasonable for the Commission to approve the application on the condition that the easement, which had been authorized by the Association, be finalized. Contrary to plaintiffs' argument, this conditional approval does not usurp the Commission's authority by making the CT Page 4069-N Association the ultimate decision maker, but rather places what appears to be a reasonably attainable condition on the applicant's right to proceed with the project. Obviously, the project cannot proceed if the exact terms of the easement are not finalized or if the Association legally revokes its authorization. However, simply because the requisite condition may not be met, does not render the decision imposing this condition invalid. The law is established that the Commission may impose reasonable conditions to its approval of the project when satisfaction of the conditions appears probable. See Stiles v.Town Council of West Hartford, 159 Conn. 211 (1970); Pearl v.Planning and Zoning Commission of the Town of Manchester,
Superior Court, Docket No. 89-360376, Judicial District of Hartford/New Britain at Enfield (June 11, 1990).
An argument related to plaintiff's contention that the conditional approval was inappropriate, is that this approval authorized a nuisance because it would allow water from the completed project to run off onto property of plaintiffs Blaker and Reynolds. The applicant submitted engineering evidence that the project involved a storm water retainage system and drain line which allowed water to discharge into salt water owned by the state and not owned by these plaintiffs. See ROR, #29, p. 51. This evidence is hotly disputed by plaintiffs, but this issue need not be resolved by this court. There is substantial evidence in the record to support the position that the water drainage would not trespass onto the property of plaintiffs Blaker and Reynolds, and this court will not substitute its fact find discretion for that of the Commission.
Plaintiffs next argue that the Commission's decision is void because the Commission received information after the January 31, 1995 hearing. Plaintiffs' counsel was requested by the Commission to submit legal authorities regarding the state's ownership of property beyond the high water mark (ROR #29, p. 27-28). Plaintiffs made this submission in a letter memorandum with accompanying attachments. The applicant responded in a letter dated February 10, 1995 (ROR, p. 37). This letter included a memorandum from the Harbor Point Association to its membership regarding the easement and a draft of the easement. Plaintiffs contend that they were prejudiced by the submission of these two documents. This contention is clearly meritless. The substance of the memorandum was read into the record at the hearing before the Commission (ROR, #29, pp. 4-5). Similarly, the facts that the Association had authorized the easement and that the exact terms CT Page 4069-O of the easement had been proposed, but not finalized were also presented at length at the hearing (ROR, p. 8; #29, pp. 3-11). Plaintiffs received a full opportunity at the hearing to respond to any substantive aspects of these documents. Indeed, plaintiffs maintained both before and after the February 10, 1995 submissions that the agreement regarding the easement had not been finalized See Plaintiffs' Brief, Exhibit H. In short, no significantly new factual information was provided by these documents and plaintiffs cannot possibly claim any actual prejudice by the Commission's receipt of them. See Blaker v.Planning and Zoning Commission, 212 Conn. 471, 477-481 (1989).
Plaintiff's final argument is that the Commission failed to appropriately base or explain its decision (See C.G.S. §22a-106 (d) and (e)), especially since the application had previously been rejected and there had been no material change of circumstances. These arguments are rejected substantially for the reasons advanced by defendants. See Brief of Defendant, pp. 21-25. The chief problem with plaintiffs' final positions is that plaintiffs attempt to look solely at the Commission's most recent decision without appreciating the fact that the earlier two applications were denied without prejudice. As previously explained, the Commission in its earlier decisions considered whether the proposed project was consistent with CAM, articulated how the initial applications failed to comply with CAM, and invited the applicant to address these and other concerns of the Commission. Thus, a review of the Commission's consideration of this project as a whole establishes the Commission carefully addressed the project's compliance with the law, adequately stated the reasons for its decisions, and appropriately exercised its discretion granting the application.
CONCLUSION
Therefore, for all the foregoing reasons, the plaintiffs' appeal is dismissed.
Dated this 16th day of May, 1996.
STEVENS, JUDGE CT Page 4069-P